IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 1, 2008

## STATE OF TENNESSEE v. BARRY SINGLETON

**Direct Appeal from the Criminal Court for Shelby County**
No. 04-01852     W. Mark Ward, Judge

**No. W2006-02476-CCA-R3-CD  - Filed April 29, 2009**

The defendant, Barry Singleton, appeals his convictions for aggravated kidnapping and aggravated rape.  The defendant was sentenced to twelve years as a Range I, standard offender for the aggravated kidnapping conviction and to twenty-five years as a violent offender for the aggravated rape conviction.  The sentences were ordered to run consecutively for an effective sentence of thirty-seven years.  On appeal, he contends that:  the evidence was insufficient to support his convictions; the trial court erred in allowing the State to introduce photographs into evidence that had not been provided to the defense prior to trial; it was error to allow a witness not provided to the defendant to testify; it was error to allow the victim to testify without providing the tape recording of her initial statement to police; and the court erred in imposing his sentence with regard to both the length and manner.  After careful review, we affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Byron B. Winsett and Charles S. Mitchell, Memphis, Tennessee (on appeal), and Leslie I. Ballin, Memphis, Tennessee (at trial), for the appellant, Barry Singleton.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Charles Bell and Pamela Fleming, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

In the instant case, the victim's Good Samaritan turned out to be her rapist.  The victim ran out of gas as she drove home from work.  The defendant approached the victim and inquired if she needed his help.  She declined an offer to go to his home, but she asked the defendant to call her uncle.  The defendant left to call her uncle but, when he returned, told the victim he did not receive an answer from her uncle.  She gave the defendant money to purchase gas for her, and he left with

the money. He returned a few minutes later with a gasoline can. The defendant left again and said he would return with the gas. When he returned, he was on foot and did not have the gas can.

The victim testified that, upon his return, the defendant had a look in his eyes that was "not normal," and he used something to break her car window. The defendant pulled the victim from her car and dragged her across the street. He removed her sweater and jacket and left them on the street. The defendant dragged her further into some bushes beside the road. As she lay on the ground, the victim fought the defendant, which resulted in the defendant dragging her further into the bushes. The defendant sat on the victim's stomach and repeatedly punched her in the face.

The victim told the defendant that she was pregnant and had AIDS, but he said he did not care. She grew tired and told the defendant to "do whatever you have to do." The defendant removed her shoes and pants and instructed her to put his penis inside her. The victim grabbed the defendant's penis and squeezed and twisted it. He yelled and punched her in the face again. She screamed. The defendant then told the victim he would kill her if she did not stop screaming, and she stopped screaming.

She told the defendant to kiss her and, when he leaned toward her, she bit his lip. The defendant retaliated by biting her on the nose, chin, and neck. Their struggle continued, but the victim began to have difficulty seeing due to blood dripping into her eyes. The defendant pinned her to the ground and urinated on her. He digitally penetrated her and then penetrated her with his penis.

The defendant was frightened away by police lights, and the victim ran toward the police. Because the defendant had earlier displayed his driver's license to the victim while she was still locked in her car in an effort to gain her trust, she was able to tell the police that the defendant lived in the 5100 or 5200 block of Hudgins.

After speaking with the victim's uncle, the police traced the defendant to 5192 Hudgins. The victim's uncle gave the police the phone number from which he received a call from the defendant on the night of the incident. The police spoke with the defendant's mother when they arrived at his home. She told them that the defendant drove a green vehicle with chrome rims, which matched the victim's description of the car. In the home, the officer observed several photographs that matched the description given by the victim.

The officer proceeded to the defendant's workplace and observed that the defendant's face and hands appeared to have fingernail scratches on them.

At trial, the defendant testified that his scratches were sustained during an altercation with a former girlfriend. He corroborated the victim's story to the time that he left with the gasoline can. He said that when he returned with the gas, the car window was broken and the victim was gone. The defendant testified that he was arrested at work the next day, and he denied raping and kidnapping the victim. He said he wished he had notified the police that the victim was missing

when he came back with the gas because he would have been testifying on her behalf rather than as the defendant. He said he just did not want to be involved in the matter.

The defendant was convicted by the jury as charged.

Analysis

The defendant argues that the evidence was insufficient to support his convictions of aggravated kidnapping and aggravated rape. He also contends that the court should have excluded specific evidence, including the testimony of two witnesses.

On appeal, the defendant raises the issue of sufficiency of the evidence. He concludes that the evidence presented did not meet the "high standard" enunciated in Rule 13(e) of the Tennessee Rules of Appellate Procedure and in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979).

A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory. A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard for review by an appellate court is whether, "after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Smith*, 24 S.W.3d 274, 278 (Tenn. 2000) (quoting *State v. Boggs*, 995 S.W.2d 102, 105 (Tenn. 1999)); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781 (1979). The credibility of the witnesses and the weight given to their testimony are matters entrusted to the jury as trier of fact. *Smith*, 24 S.W.3d at 278 (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). In determining the sufficiency of the evidence, the appellate court does not reweigh the evidence or substitute its inferences for those of the trier of fact. *Id.* at 279 (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all legitimate inferences that may be drawn therefrom. *Id.*

Aggravated rape is defined as the unlawful sexual penetration of a victim by the defendant where the defendant causes bodily injury to the victim. T.C.A. § 39-13-502(a)(2) (2003). Aggravated kidnapping is defined as false imprisonment committed to facilitate the commission of any felony or where the victim suffers bodily injury. T.C.A. § 39-13-304(a)(1), (4) (2003).

The State produced sufficient evidence for a reasonable trier of fact to find the defendant guilty of both crimes. The victim testified that the defendant pulled her from her vehicle, tore off her clothes, dragged her across the road, repeatedly punched her in the face, bit her, urinated on her, then sexually penetrated her with both his fingers and his penis. The jury accredited her testimony, and her testimony establishes all the elements required to support the convictions.

Next, the defendant argues that the trial court erred in admitting photographs that were not disclosed to the defendant prior to trial. The State argues that the photographs were properly admitted because they were not discovered by the State until mid-trial. The photographs were identical to pictures already admitted into evidence, but the State alleges they were a better quality because they were digital.

Rule 16(a)(1)(F) of the Tennessee Rules of Criminal Procedure requires the State to allow a defendant access to photographs before trial if the State intends to use them during trial. Rule 16(d)(2) of the Tennessee Rules of Criminal Procedure sets forth sanctions a trial court may impose if the State fails to comply with the Rule and states that the court may order the violating party to permit discovery or inspection, grant a continuance, prohibit the party from introducing the undisclosed evidence, or enter an order that the trial court deems just under the circumstances. The Tennessee Supreme Court has held that evidence should not be excluded for noncompliance with Rule 16, except when it is shown that a defendant is actually prejudiced by the State's failure and the prejudice cannot otherwise be eradicated. *State v. Payne*, 791 S.W.2d 10, 16 (Tenn. 1990). This court has established several factors to be considered in determining whether a party has been prejudiced by another party's failure to comply with discovery. Those factors include: the proximity to trial, the degree to which the aggrieved party should have been aware and prepared for the undisclosed evidence, the importance of the evidence and its disclosure, the degree to which the evidence is merely cumulative of other evidence bearing on the same or a similar point, the availability and likely effectiveness of less drastic sanctions, the failure of the aggrieved party to seek an alternate remedy, the length of delay in complying with the required disclosures, and whether the failure to comply with discovery rules was willful or inadvertent so as to gain a prejudicial or tactical advantage. *State v. Michael D. Street*, No. M2004-00299-CCA-R9-CO, 2005 Tenn. Crim. App. LEXIS 733, at *12-13 (Tenn. Crim. App. at Nashville, July 20, 2005).

Here, the trial court found that the defendant failed to show how he would suffer prejudice if the State were allowed to introduce the digital photographs of the defendant's face. The State discovered the digital photographs on the night after the second day of trial while searching, at the request of defense counsel, through the property room to locate a tape recording of the victim's statement. The State did not locate the tape recording but did find a disk containing the photographs. The State asked the trial court if it could recall either police officer for the purpose of introducing the pictures. The State informed the trial court that the photographs were essentially "pictures that are already in evidence, however, they are on a disk and they're much clearer." The trial court concluded that the late admission of the photographs was an unintentional, inadvertent failure to comply with the rules. The trial court also held that excluding the photographs would be an extreme sanction under the circumstances.

The defendant has not met his burden of demonstrating that he was actually prejudiced by the admission of the photographs. Defense counsel acknowledged that the photographs were the same as those contained in Exhibit 38. The defendant knew that there were photographs prior to trial and that the photographs would be introduced as evidence at trial. The defendant is not entitled to relief on this issue.

-4-

Next, the defendant argues that the trial court erred in allowing a witness to testify at trial because the State did not provide her name to the defendant as a potential witness. The witness was the woman who allegedly scratched the defendant's face. Tennessee Code Annotated section 40-17-106 provides that "[i]t is the duty of the district attorney general to endorse on each indictment or presentment, at the term at which the same is found, the names of such witnesses as the district attorney general intends shall be summoned in the cause." The Tennessee Supreme Court has concluded, however, that the statute is directory rather than mandatory and does not necessarily disqualify a witness from testifying whose name has been omitted from the indictment. *State v. Harris*, 839 S.W.2d 54, 69 (Tenn. 1992). In order to obtain relief, the defendant must demonstrate that he was prejudiced, that the State did not disclose the witness in bad faith, or that the State gained an undue advantage by omitting disclosure of the witness.

The record is devoid of any evidence that the State proceeded with unclean hands in calling the witness to testify. The defendant told the police that the witness caused him to have the scratches on his face at the time of the underlying offenses. The defendant should have been aware that the witness might be called to corroborate his statement to the police. The defendant is not entitled to any relief on this issue.

Next, the defendant argues that the trial court erred in failing to strike the testimony of the victim. In the alternative, the defendant argues that the trial court should have declared a mistrial because the State lost a tape recording of the victim's statement. The officer assigned to the victim's case testified during trial that she had created a tape recording of the victim's statement following the incident. The officer further testified that the transcriptionist informed her that she was not able to transcribe the tape because it was inaudible. The officer took a supplemental written statement from the victim, which was submitted to the parties. The tape recording was eventually lost.

During the trial, the defendant requested that the victim's testimony be stricken in its entirety or that the trial court declare a mistrial. The defendant stated that the State had been "nothing but fair" in providing discovery, and he made it clear that the State had not engaged in misconduct. The trial court declined to delay the trial to allow for more time to search for the tape, declined to strike the testimony, and declined to allow a mistrial.

Our review reflects that the trial court properly refused to strike the victim's testimony or declare a mistrial. The defendant relies on the Jencks Act, Tennessee Rule of Criminal Procedure 26.2 to support his position that sanctions were in order. Tennessee Rule of Criminal Procedure 26.2 states in pertinent part:

> (a)    Motion for Production. After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

. . .

(d)     Sanction for Failure to Produce Statement. – If the party who called the witness disobeys an order to deliver a statement, the court shall strike the witness's testimony from the record and order the trial to proceed. If the attorney for the state disobeys the order, the court shall declare a mistrial if required in the interest of justice.

Rule 26.2(e) sanctions do not apply when "the other party" is not ordered to produce the statements. *State v. Joseph Angel Silva*, III, No. M2003-03063-CCA-R3-CD, 2005 Tenn.Crim.App. LEXIS 519, at *27 (Tenn. Crim. App. at Nashville, May 25, 2005). Here, the State was not ordered to produce the tape recording. The trial court told the State to look for the tape to see if it still existed. Moreover, there is nothing in the record to show that the victim's oral statement differed from her written statement. Therefore, the trial court properly refused to strike the victim's testimony or to grant a mistrial.

The defendant also challenges both the length and manner of his sentences. The defendant contends that the trial court improperly enhanced his sentence to the maximum in the range and improperly imposed consecutive sentences.

When a defendant challenges the length, range, or manner of service of a sentence, this court conducts a *de novo* review of the record with a presumption that the determinations made by the sentencing court are correct. T.C.A. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after duly considering and weighing the factors and principles set out under the sentencing law, and its findings are adequately supported by the record, then we may not disturb the sentence even if we would have preferred a different result. *State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000). However, if the trial court failed to comply with the statutory guidelines, we must review the sentence *de novo* without a presumption of correctness. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997).

The defendant bears the burden of proving the sentence is improper. T.C.A. § 40-35-401, Sentencing Comm. Cmts. To determine whether the defendant has carried this burden, this court considers: (a) the evidence adduced at trial and the sentence hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel as to sentencing alternatives; (e) the nature and characteristics of the offense; (f) the enhancement and mitigating factors; and (g) the defendant's potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-103(5), -210(b) (2003).

At the sentencing hearing, the victim testified about the impact of being raped by the defendant. She was afraid that the defendant was going to kill her just prior to and during the rape. She said that she suffered a lot of pain from the beating she received from the defendant. She also

testified that she worried about the health of her unborn child. Fortunately, her baby was unharmed. The victim testified that she has been unable to rest since the rape. She was afraid to come to the sentencing hearing because of her fear of the defendant. She said she wanted justice to be done and asked the court to put the defendant in jail so he would not be able to hurt anyone else.

Following the sentencing hearing, the court stated that it had considered the evidence presented at the trial and the sentencing hearing, as well as the presentence report and the principles of sentencing. The court found that several enhancement factors applied, including the defendant's previous history of criminal convictions. The court specifically noted that the defendant had multiple prior convictions that were "assaultive in nature." The court found that the defendant treated the victim with exceptional cruelty during the commission of the offense because: the defendant repeatedly punched the victim in the face; he said he did not care when the victim told him that she was four months pregnant; he urinated on her; and he told her he would kill her. The trial court also applied the enhancement factor that the defendant committed the offense when the risk to human life was high. Based on these enhancements, the trial court imposed the maximum sentence on both convictions. The trial court specifically noted that the defendant's criminal record was significant, even though most of his prior convictions were misdemeanors.

The defendant argues that the trial court erred by applying enhancement factors based on facts not determined by the jury. In *State v. Gomez*, 163 S.W.3d 632, 650 (Tenn. 2005), our state supreme court concluded that *Blakely v. Washington*, 542 U.S. 296 (2004), did not announce a new rule of constitutional law and merely clarified *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The court in *State v. Gomez II*, 239 S.W.3d 733, 740 (Tenn. 2007), concluded that the application of the enhancement factor for a previous history of criminal convictions does not offend the Sixth Amendment. But, the *Gomez II* court did conclude that a trial court may not enhance a defendant's sentence based upon factors not determined by a jury or admitted by a defendant. *Id.*

The State agrees that the trial court erred in relying upon factors other than prior convictions for enhancing the sentence because the factors applied were neither admitted by the defendant nor found by the jury. Therefore, with the exception of the defendant's prior history of criminal convictions, the trial court's application of enhancement factors was in error.

The defendant was convicted of aggravated rape, a Class A felony, and aggravated kidnapping, a Class B felony. At the time of the offense, a Class A felony carried a sentence of fifteen to twenty-five years, and a Class B felony carried a sentence of eight to twelve years. T.C.A. §§ 40-35-112(a)(1), (2) (2003). The presumptive sentence began at the midrange for Class A felonies and at the minimum of the sentencing range for Class B felonies. T.C.A. § 40-35-210(c) (2003). The trial court enhanced the defendant's sentence to the maximum of twenty-five and twelve years, respectively, for the two convictions.

We conclude the enhancement factor was sufficient to enhance the Class A felony from twenty years to twenty-five years and the Class B felony from eight to twelve years. This enhancement factor, alone, can be used to enhance a sentence to the maximum and firmly embed it

in the ceiling. *State v. James Taylor, Jr.*, No. W2006-02085-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 865, at *18 (Tenn. Crim. App. at Jackson, Nov. 14, 2007). The trial court considered that the defendant had multiple prior convictions involving assault and a prior juvenile adjudication for assault. This case is similar to *Taylor* in that the defendant had prior assault convictions and was convicted of an offense involving another assault. The court in *Taylor* concluded that the defendant's prior record, including two prior assaults, was enough to enhance the defendant's sentence to the maximum. Here, the defendant also had prior criminal convictions that were sufficient to enhance his sentence to the maximum and firmly embed it in the ceiling. The defendant is not entitled to relief on this issue.

Next, the defendant argues that the trial court erred in imposing consecutive sentences. Consecutive sentences may be ordered if the trial judge finds by a preponderance of the evidence that the defendant is a dangerous offender whose behavior indicated little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. T.C.A. § 40-35-115(b)(4) (2003). The trial court must also find that "the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995); *see also State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999). The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," T.C.A. § 40-35-102(1), and "no greater than that deserved" under the circumstances, T.C.A. § 40-35-103(2).

The trial court properly imposed consecutive sentences because the court found that the defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation to commit his crimes. The defendant argues that the trial court imposed consecutive sentences based on "judge found facts." But, this argument is without merit as the Tennessee Supreme Court has specifically held that *Blakely* did not impact Tennessee's consecutive sentencing scheme. *State v. Robinson*, 146 S.W.3d 469, 499 n.14 (Tenn. 2004). The defendant is not entitled to relief on this issue.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE